966 A.2d 75 (2009)
406 N.J. Super. 1
ASBURY PARK PRESS, Plaintiff-Appellant,
v.
COUNTY OF MONMOUTH and Carol Melnick, Defendants-Respondents.
John Paff, Plaintiff-Appellant,
v.
Monmouth County and James Gray, in his Capacity as the Monmouth County Custodian of Records, Defendants-Respondents.
Nos. A-3567-07T2, A-3626-07T2.
Superior Court of New Jersey, Appellate Division.
Argued February 10, 2009.
Decided March 17, 2009.
*76 Darren Dapas argued the cause for appellant Asbury Park Press (Lanfrit & Tullio, attorneys; Michelle M. Tullio, Somerset, and Mr. Dapas, on the brief).
Walter M. Luers argued the cause for appellant John Paff.
Linda Grasso Jones, Matawan, argued the cause for respondents County of Monmouth and James Gray (Cleary, Alfieri & Jones, attorneys; Ms. Jones, of counsel and on the brief).
Wong Fleming, attorneys for respondent Carol Melnick, joined in the brief filed by respondents County of Monmouth and James Gray.
Before Judges SKILLMAN, GRALL and ASHRAFI.
The opinion of the court was delivered by
*77 ASHRAFI, J.S.C. (temporarily assigned).
In these consolidated appeals, we consider whether the County of Monmouth may withhold public disclosure of its agreement with an employee to settle her sexual harassment and discrimination lawsuit. The trial court ruled that neither the Open Public Records Act ("OPRA"), N.J.S.A. 47:1A-1 to -13, nor the public's common law right of access to government records requires disclosure.
We reverse and hold that OPRA requires disclosure of the settlement agreement. We need not reach the issue of the common law right to disclosure.
The facts relevant to our decision are not in dispute. In April 2005, Carol Melnick filed a lawsuit in the Superior Court naming as defendants the Monmouth County Board of Chosen Freeholders and five individually named past and present employees of the County. Melnick asserted claims for sex discrimination, sexual harassment, retaliation, and hostile work environment.
Through entry of a consent protective order, Melnick and the County defendants agreed to maintain the confidentiality of information exchanged between the parties while conducting discovery. The protective order applied to:
any medical, psychological counseling, financial or personnel information and/or personnel files concerning Plaintiff and/or Defendants, as well as records of complaints and/or investigations conducted by the County of Monmouth ... of harassment, discrimination and/or retaliation by individuals other than Plaintiff, or other documents ... that pertain to employees of the County of Monmouth other than Plaintiff.
In June or July 2007, Melnick settled her lawsuit. The settlement agreement contained its own confidentiality provision and was not filed with the court or executed in the form of an order or judgment. Instead, on August 6, 2007, Melnick and the County jointly filed a one-sentence stipulation of dismissal terminating the lawsuit with prejudice.
In July 2007, appellants John Paff and the Asbury Park Press, acting separately, made formal requests under OPRA for records related to the settlement. The County declined both requests on procedural and substantive grounds. Both appellants persisted in their OPRA requests and attempted to satisfy the County's procedural objections. The County then responded that it was not required to disclose information pertaining to Melnick's lawsuit under OPRA or any other law.
Each appellant filed a complaint in the Law Division to compel disclosure. Paff requested only a copy of the settlement agreement. The Asbury Park Press requested copies of a broader range of records pertaining to Melnick's lawsuit. The trial court directed that Melnick be joined as a party-defendant and consolidated the two cases for purposes of a summary trial under Rule 4:67.
At the summary trial, both appellants stipulated that the only record they then sought was a copy of the County's settlement agreement. Relying upon a documentary record and the parties' arguments, the trial court concluded that OPRA's definition of "government record" specifically excludes information generated in connection with a sexual harassment complaint. As to the common law, the court concluded that Melnick's privacy interests and the court's policy favoring settlement of lawsuits outweigh the public's interest in disclosure of the terms of a sexual harassment settlement involving a governmental agency.
*78 Our standard of review is plenary with respect to interpretation of the OPRA exclusion upon which the County relies. See Manalapan Realty v. Twp. Comm. of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995).

I
Long before OPRA was enacted in 2002, New Jersey espoused a policy in favor of open government and recognized a common law right of access to government records. See Polillo v. Deane, 74 N.J. 562, 379 A.2d 211 (1977); Moore v. Bd. of Chosen Freeholders, 76 N.J.Super. 396, 184 A.2d 748 (App.Div.), modified, 39 N.J. 26, 186 A.2d 676 (1962); Ferry v. Williams, 41 N.J.L. 332 (Sup.Ct.1879). By 1963, the common law right of access had been codified as a "Right to Know Law" giving the public access to records that were required by law to be made, maintained, or kept on file by a government agency. N.J.S.A. 47:1A-1 to -4 (amended and supplemented by OPRA, L. 2001, c. 404). The courts interpreted this disclosure requirement narrowly. See Higg-A-Rella, Inc. v. County of Essex, 141 N.J. 35, 43-44, 660 A.2d 1163 (1995); Home News Publ'g Co. v. State, 224 N.J.Super. 7, 11, 539 A.2d 736 (App.Div. 1988).
OPRA superseded the Right to Know Law. Its purpose is "to maximize public knowledge about public affairs in order to ensure an informed citizenry." Mason v. City of Hoboken, 196 N.J. 51, 64, 951 A.2d 1017 (2008) (quoting Asbury Park Press v. Ocean County Prosecutor's Office, 374 N.J.Super. 312, 329, 864 A.2d 446 (Law Div.2004)). OPRA requires that all government records be disclosed upon request except those exempted by statute, legislative resolution, administrative regulation, executive order, rules of court, judicial decisions, or federal law. N.J.S.A. 47:1A-1, -9.
In the opening words of OPRA, the Legislature explicitly stated its intent favoring disclosure:
The Legislature finds and declares it to be the public policy of this State that:
government records shall be readily accessible for inspection, copying, or examination by citizens of this State, with certain exceptions, for the protection of the public interest, and any limitation on the right of access accorded by [OPRA] shall be construed in favor of the public's right of access; ...
[N.J.S.A. 47:1A-1.]
The statute also declares that it should not "be construed as affecting in any way the common law right of access to any record." N.J.S.A. 47:1A-1; see N.J.S.A. 47:1A-8.
OPRA defines "government record" broadly to include all documents and similar materials, and all information and data, including electronically stored data, that have been made or received by government in its official business. From this broad definition, the statute provides an exception for "inter-agency or intra-agency advisory, consultative, or deliberative material," and it lists descriptive categories of information that are expressly excluded from that broad meaning of "government record." N.J.S.A. 47:1A-1.1.[1] As further expansion of the public's right of access, OPRA places the burden of proof on the government to show that a requested record may be withheld under an exemption or exclusion from the disclosure requirement. N.J.S.A. 47:1A-6.
*79 In denying access to the settlement agreement with Melnick, Monmouth County relied on two categories of exclusions listed in N.J.S.A. 47:1A-1.1. The first pertains to "information which is a communication between a public agency and its insurance carrier." Ibid. The County has now abandoned this untenable ground for refusing disclosure. A final settlement agreement executed by an adverse party or her attorney is not a communication between a government agency and its insurance carrier.
The only exclusion that is relevant here is the one concerning sexual harassment. That provision states in full that the meaning of "government record" shall not include:
information generated by or on behalf of public employers or public employees in connection with any sexual harassment complaint filed with a public employer or with any grievance filed by or against an individual or in connection with collective negotiations, including documents and statements of strategy or negotiating position.
[Ibid.]
The County argues that this exclusion should be read expansively and that the settlement with Melnick is "information generated ... in connection with [a] sexual harassment complaint." The trial judge agreed that the exclusion contains broad language and consequently applies to a confidential settlement reached in a sexual harassment lawsuit.
Nothing in the statute itself, however, states that the sexual harassment exclusion, or any other exclusion, should be read expansively or broadly. In fact, the statute states the opposite, that "any limitations on the right of access ... shall be construed in favor of the public's right of access." N.J.S.A. 47:1A-1. The County and the trial court did not follow this express policy directive of the Legislature to construe limitations narrowly.
The plain language of the statute limits the exclusion to sexual harassment complaints "filed with a public employer." Here, Melnick's complaint was filed in the Superior Court, not with Monmouth County. Her complaint does not come within the plain language of the exclusion.
Nor was Melnick's Superior Court complaint a "grievance filed by or against an individual," as argued by the County. The word "grievance" has a known meaning in the context of employer-employee relationships, especially when it is placed next to the words "collective negotiations." See, e.g., N.J.S.A. 34:13A-5.3; Saginario v. Attorney General, 87 N.J. 480, 435 A.2d 1134 (1981); Red Bank Reg'l Educ. Ass'n v. Red Bank Reg'l High Sch. Bd. of Educ., 78 N.J. 122, 393 A.2d 267 (1978). A complaint filed in the Superior Court is not the same as a "grievance" within the context of employment relationships.
The trial court found it significant that Melnick and the County included terms of confidentiality in their settlement agreement. But the parties' agreement cannot override the public's right of access under OPRA. See Lederman v. Prudential Life Ins. Co., 385 N.J.Super. 307, 317-18, 897 A.2d 362 (App.Div.), certif. denied, 188 N.J. 353, 907 A.2d 1013 (2006).
Lawsuits are filed in a public forum. One of our basic Rules of Court requires that court proceedings be conducted openly unless otherwise provided by rule or statute. R. 1:2-1. Reviewing a history of open government, our Supreme Court has described "open judicial proceedings as the cornerstone of a democratic society." Tarus v. Borough of Pine Hill, 189 N.J. 497, 507, 916 A.2d 1036 (2007)(citing 1 Jeremy Bentham, Rationale of Judicial Evidence *80 524 (London, 1827)). Privacy interests give way to the public's right to know the business of the courts, with exceptions not relevant here primarily applicable in the Family Division.
Even when neither party is a government agency, the public has a right of access to court documents filed in civil lawsuits. Hammock v. Hoffman-LaRoche, Inc., 142 N.J. 356, 662 A.2d 546 (1995); Zukerman v. Piper Pools, Inc., 256 N.J.Super. 622, 628-29, 607 A.2d 1027 (App.Div.), certif. denied, 130 N.J. 394, 614 A.2d 617 (1992). Several months after the trial court ruled that Monmouth County may refuse disclosure of its settlement agreement with Melnick, this court held in Verni v. Lanzaro, 404 N.J.Super. 16, 960 A.2d 405 (App.Div.2008), that the public has a right to disclosure of a confidential settlement entered under seal in a civil lawsuit between private parties. It would be an odd departure from the view expressed in Verni and the other cited cases if we were to uphold the secrecy of a settlement in a civil lawsuit involving a government agency.
The trial court was concerned that disclosing sexual harassment settlements would have a chilling effect on victims coming forward to pursue sexual harassment claims against public employers. No legislative pronouncement, however, points to concern about a chilling effect as the primary policy reason for the statutory exclusion. Public disclosure of settlements may, in fact, encourage other victims to come forward. The legislative purpose was more likely protection of the privacy of all parties involved in an internal sexual harassment complaint, not just the privacy of victims.
By referring in OPRA to sexual harassment complaints "filed with a public employer," the Legislature distinguished between internal complaints addressed only to the employer and those filed as a matter of public record. The distinction makes sense and continues to value a policy of encouraging victims to come forward. The Legislature gave victims the opportunity to bring sexual harassment complaints to their public employers without public access. At the same time, the Legislature did not interfere with the long-standing governmental policy of conducting judicial affairs openly to the public. A victim who brings a lawsuit should understand that litigation is done in a public forum and is subject to public knowledge. See Zukerman v. Piper Pools, Inc., supra, 256 N.J.Super. at 628-29, 607 A.2d 1027. Public disclosure gives some assurance to victims, the accused, and the public that such matters before the courts will be addressed fairly.
Furthermore, the filing of a lawsuit does not expose to the public all the details of a sexual harassment claim. Protective orders entered under Rule 4:10-3, such as the discovery order entered in Melnick's case, can preserve the privacy of truly personal information, including medical and psychological records and the contents of personnel files. See Application of VV Publ'g Corp., 120 N.J. 508, 519-20, 577 A.2d 412 (1990). Our decision does not address the confidentiality of such information exchanged in discovery. We determine here only the County's obligation to disclose the settlement agreement with Melnick under the provisions of OPRA.
The County argues that the interests of the public are less important where, as here, insurance rather than County funds were used to pay the settlement to Melnick. We think coverage by the County's liability insurer does not displace the public interest and is irrelevant on the issue of disclosure requirements under OPRA.
*81 The trial court also noted the policy of the courts favoring settlement of litigation. E.g., Nolan v. Lee Ho, 120 N.J. 465, 577 A.2d 143 (1990). Defendants sometimes have an incentive to avoid exposure or embarrassment, and terms of confidentiality may promote settlement. But the policy favoring settlements is far outweighed by the importance of maintaining open government. In Tarus, supra, 189 N.J. at 507, 916 A.2d 1036, the Court emphasized "New Jersey's strong public policy favoring open government and the general public['s] ... right to be fully informed on the actions of its elected officials."[2]
In sum, the Legislature struck a balance in OPRA between the competing interests of privacy and open government. It excluded from the reach of OPRA those complaints of sexual harassment that are filed only with the public employer and do not enter into a public forum, such as the courts. The Legislature did not undertake to assure privacy when an alleged victim of sexual harassment chooses to seek redress in the courts. We conclude that appellants have a right of access under OPRA to the settlement agreement between Monmouth County and its employee, Melnick.

II
Appellants also seek attorney's fees from the County. OPRA provides that a "requestor who prevails in any proceeding shall be entitled to a reasonable attorney's fee." N.J.S.A. 47:1A-6. See generally Mason v. City of Hoboken, supra, 196 N.J. 51, 951 A.2d 1017. The County contends that appellants are not entitled to any attorney's fees because their original OPRA requests were properly denied. The County states that the original request of the Asbury Park Press did not identify specific documents, as OPRA requires. See N.J. Bldrs. Ass'n v. N.J. Council on Affordable Hous., 390 N.J.Super. 166, 176, 915 A.2d 23 (App.Div.), certif. denied, 190 N.J. 394, 921 A.2d 448 (2007); MAG Entm't, LLC v. Div. of Alcoholic Beverage Control, 375 N.J.Super. 534, 549, 868 A.2d 1067 (App.Div.2005). Acknowledging that Paff's original request was for specific documents, the County argues that Paff made his request too early, before the Melnick lawsuit had been formally dismissed.
The County takes a constricting view of the fee-shifting provision of OPRA. A requestor is not outright disqualified from entitlement to fees because the original request was too broad or made a week too early. In New Jerseyans for a Death Penalty Moratorium v. New Jersey Department of Corrections, 185 N.J. 137, 153, 883 A.2d 329 (2005), the Court held that a requestor is entitled to reasonable attorney's fees "[i]f the court determines that the custodian unjustifiably denied access to the record in question." Here, the County did not deny access only at first and then agree to provide the settlement agreement when the requests were modified or repeated after dismissal of the Melnick case. Cf. N.J. Bldrs. Ass'n, supra, 390 N.J.Super. at 171, 915 A.2d 23 (plaintiff not entitled to attorney's fees where government agency initially denied improper request and offered a "reasonable solution" to *82 making appropriate disclosures). The County has persistently refused to disclose the settlement agreement. Appellants were compelled to litigate to win disclosure of the agreement, and they have now prevailed in the litigation. They are entitled to fees.
The trial court did not consider attorney's fees because appellants were not prevailing requestors there. The question of how much in attorney's fees should be awarded must be developed through a factual record in the trial court. In considering that issue, the trial court must follow the guidelines established by the Supreme Court in New Jerseyans for a Death Penalty Moratorium, supra, including "the public importance of the matter, the degree of success achieved, the ... risk ... of non-payment, and any other factors" that support or weigh against the request. 185 N.J. at 158, 883 A.2d 329.

III
We reverse and direct that the County make a copy of the settlement agreement available to appellants within seven days of this decision in accordance with N.J.S.A. 47:1A-5(g) and (i).[3] We remand to the trial court for consideration of appellants' demand for attorney's fees under N.J.S.A. 47:1A-6.
NOTES
[1] Two other sections of OPRA also contain exclusions from the disclosure requirement: N.J.S.A. 47:1A-3 pertaining to records of investigations in progress and N.J.S.A. 47:1A-10 pertaining to personnel and pension records.
[2] We need not consider whether Monmouth County had authority in the first place to enter into a confidential settlement agreement with Melnick. Cf. Payton v. N.J. Tpk. Auth., 148 N.J. 524, 556-57, 691 A.2d 321 (1997) (under the Open Public Meetings Act, N.J.S.A. 10:4-12b, -14, a government agency must promptly make minutes of closed executive sessions available to the public unless full disclosure would subvert the purpose of the particular statutory exception from open meetings); S. Jersey Publ'g Co. v. N.J. Expressway Auth., 124 N.J. 478, 493, 591 A.2d 921 (1991) (same).
[3] The County has not asserted any grounds for redaction of information from the settlement agreement in accordance with N.J.S.A. 47:1A-1, -1.1, -5(g), or -9.