Reversed and remanded for a new trial on both liability and damages.

128 A.3d 1173

C.G. AND R.G. AS PARENTS OF C.G. O/B/O C.G., A MINOR, PLAINTIFFS, v. WINSLOW TOWNSHIP BOARD OF EDUCATION AND TYRA MCCOY–BOYLE IN HER OFFICIAL CAPACITY AS RECORDS CUSTODIAN AND BUSINESS ADMINISTRATOR/BOARD SECRETARY OF THE WINSLOW TOWNSHIP BOARD OF EDUCATION, DEFENDANTS.

Superior Court of New Jersey
Law Division
Camden County

Decided July 27, 2015.

416

*Walter M. Luers* for plaintiffs (*Law Offices of Walter M. Luers, L.L.C.*, attorneys).

*Adam S. Herman* and *Cherie L. Adams* for defendants (*Adams, Gutierrez & Lattiboudere, L.L.C.*, attorneys).

DEBORAH SILVERMAN KATZ, A.J.S.C.

*INTRODUCTION*

This is an action brought under the Open Public Records Act ("OPRA"), *N.J.S.A.* § 47:1A–1 to –13, and common law right of access, through which plaintiffs originally sought settlement agreements and email correspondence from the Defendants. During the course of this litigation, the settlement agreements were ordered to be disclosed. Defendants complied with production of the settlement agreements, but redacted initials and docket num-

bers from those produced. For the reasons that follow, the initials and docket numbers were properly redacted.

*PROCEDURAL HISTORY AND LAW OF THE CASE*

Plaintiffs filed their verified complaint on September 23, 2013, alleging violations of their right to access under OPRA and the common law, as a result of defendants' responses to two separate OPRA requests propounded by the plaintiffs. The order to show cause was entered three days later. The verified complaint contains only a single count alleging a violation of OPRA, but references to the common law right of access are scattered throughout it and the accompanying brief. As to the relief sought, it requests (1) copies of the email communications to and from John Tighe ("Tighe"), a consultant hired by the Board, concerning the plaintiff; (2) settlement agreements for the five years preceding the OPRA request; and (3) reasonable attorneys' fees and costs. Defendants answered on November 8, 2013, largely denying the allegations set forth in the verified complaint.

The return date on the order to show cause was scheduled for December 6, 2013, at which time the court [1] entertained argument. By an order entered on February 20, 2014, the court required defendants to forward to it copies of the emails at issue for an in camera review, limited to the issues of whether they, as well as their attachments, are protected from disclosure pursuant to the deliberative process privilege or because they are student records protected by federal law. The court denied without prejudice plaintiffs' request for "any and all settlements of claims made on behalf of students entered into by the Winslow Township Board of Education, within the last five years," but ordered defendants to disclose "copies of agreement(s) to settlement claims made on

---

[1] This court's predecessor was the Honorable Lee A. Solomon, current Associate Justice of the New Jersey Supreme Court. Judge Solomon made several substantive rulings in this case to which this court will adhere. His predecessor in this case was current Associate Justice Faustino J. Fernandez–Vina, who appears to have only entered the order to show cause in this matter on September 26, 2013.

behalf of students, entered into by the Winslow Township Board of Education for the time period [of] August 29, 2010 to and including, August 29, 2013." Defendants were also ordered to redact the foregoing documents "to the extent necessary to exclude direct and indirect references to the students involved," to which plaintiffs were permitted to object. Finally, the court denied without prejudice plaintiffs' request for the Tighe Report.[2]

Defendants moved for reconsideration of the court's February 20, 2014, order, an application that was denied by an order entered on June 6, 2014. Plaintiffs likewise sought reconsideration, seeking settlement agreements for the requested period of five years as opposed to the three that the court permitted, but withdrew their motion when defendants voluntarily produced settlement agreements for the additional two years.

The court then held a case management conference on December 17, 2014, which resulted in an order entered on January 2, 2015. That order set out certain scheduling matters that pertained to plaintiffs' objections to the redactions, the scheduling of the court's in camera review of emails and attachments, as well as addressing the remaining issue of attorney's fees. On December 22, 2014, plaintiffs forwarded to the court their June 23, 2014, objections to defendants' redactions to the settlement agreements and, four days later, defendants followed suit by enclosing their July 8, 2014, response to plaintiffs' objections.

Plaintiffs raised three objections to the redactions: first, that defendants did not provide a reason for them in a way that would reasonably permit plaintiffs to object to them; second, that the redacted docket numbers are public information; and third, that initials in place of proper names are not privileged or otherwise confidential. Defendants challenged these contentions, asserting that "Plaintiffs are disputing the redactions just for the sake of dispute," and claiming that they were merely following the court's order of February 20, 2014, which permitted redactions of "direct

---

[2] Tighe's role in this litigation is discussed in more depth later in this decision.

or indirect references to the students involved" found on the settlement agreements. They submit that the redactions, aside from initials and docket numbers, also include addresses, the students' category of classification, and health information.

A hearing was held on July 13, 2015, at which time attorneys for both parties personally appeared; this resulted in an order entered on July 16, 2015. As to the emails in dispute, the court found that the email of January 6, 2013, was privileged and not to be disclosed; the email of January 19, 2013, 1:11 p.m., was privileged and not to be disclosed; the email of January 19, 2013, 1:21 p.m., as well as the attachment thereto, were to be disclosed; and the email of February 5, 2013, was to be disclosed, however, in regard to the two attachments thereto, the Tighe Report was privileged and not to be disclosed, but the invoice was to be disclosed. The order was stayed for ten days to accommodate any party or parties desiring to seek emergent appellate relief. The court further ruled that plaintiffs' counsel was entitled to attorneys' fees under OPRA, and scheduled a hearing for August 14, 2015, on the amount due. The court reserved decision as to the redaction of initials and docket numbers. That decision is contained herein.

*FINDINGS OF FACT*

Plaintiffs C.G. and R.G. are the parents of C.G., a disabled student within defendants' school district. Defendant Tyra McCoy–Boyle serves in several roles on the Winslow Township Board of Education's (the "Board") behalf. Of chief importance to this litigation, she is the designated records custodian for the Board.

Defendants' opposition to the order to show cause indicates that, on or about October 27, 2012, the plaintiffs filed a due process petition with the Office of Special Education. This prompted general counsel to the Board, Audra Pondish of the firm of Wade, Long, Wood, & Kennedy, L.L.C., to retain John Tighe of J & B Special Education Consultants, L.L.C., in order to evaluate the validity of the claim. Ultimately, on August 28, 2013, the parties

amicably resolved the issues that led plaintiffs to file the due process petition against the Board.

On July 17, 2013, over a month prior to settling the administrative law claim, plaintiffs' former counsel submitted the first of two written OPRA requests to the defendants seeking: (1) any letters and/or emails and attachments thereto sent to, received from, or copying Tighe between November 1, 2012, and July 17, 2013; (2) any emails and attachments thereto sent to, received from, or copying the email address "poteathe@winslow-schools.com" between October 28, 2012, and November 1, 2012; (3) any audio recordings of meetings during which C.G. was discussed between January 1, 2010, and July 17, 2013; (4) any contracts, purchase orders, vouchers, bills, invoices, and canceled checks identifying Tighe as the contractor, payee, claimant, or provider; as well as (5) any contracts, purchase orders, vouchers, bills, invoices and canceled checks for legal services provided in any case between 2010 and 2013 involving C.G. Submitted with this request was C.G.'s parents' waiver of their child's rights and protections under 20 *U.S.C.* § 1232g.

On July 26, 2013, defendants responded that no such records existed in regard to items # 1 and # 3, and produced records for items # 2, # 4, and # 5. Plaintiffs' former counsel renewed his request of July 17, 2013, on August 2, 2013, seeking all communications between the Board's general counsel and Tighe. To this response, plaintiffs' former counsel objected, stating that defendants "failed to include said records in the possession of [their] contractors, including, but not limited to, Tighe, the Wade Law Firm and the Adams Law Firm," and requested that such records be included within the Records Custodian's anticipated response.

This response came on August 9, 2013, via email, at which time the Board's Records Custodian indicated that certain responsive documents did exist, but that she was withholding same pursuant to the attorney-client privilege, citing *N.J.S.A.* § 2A:84A–20, *R.* 4:10–2, and *N.J.R.E.* 504. Other records, she stated, were redacted because they contained "personal identifying information" shielded from disclosure by *N.J.S.A.* § 47:1A–1.1; *N.J.S.A.*

§ 47:1A–10; 20 *U.S.C.* § 1232; 34 *C.F.R.* Part 99; and *N.J.A.C.* § 6A:32–7.1 to –7.6.

Plaintiffs' second OPRA request, the one most relevant to the issues to which this decision is confined, was submitted by their counsel on August 29, 2013, and asked for (1) the minutes of the August 28, 2013, closed session of the Board meeting relative to a discussion of the settlement of the C.G. claim; (2) any settlements of any claims made on behalf of students entered into by the Winslow Township Board of Education within the last five years; (3) any contracts for legal services entered into by the Board "between June 2013 and today;" (4) any purchase orders, vouchers, bills, invoices, and canceled checks for legal services rendered "between June 2013 and today" for legal services which include the case of C.G.; and (5) any Board resolution(s) which pertain(s) to items # 1 through # 4. A waiver pursuant to 20 *U.S.C.* § 1232g was likewise included.

By response dated September 12, 2013, defendants attached records responsive to items # 1, # 4, and # 5. Item # 3 was denied with the explanation that "[n]o records exist." Item # 2 was denied because it did "not name a specifically identifiable record, is overly broad and is a blanket request for a period of time." Notwithstanding this response, defendants did provide a record from a "case which was settled during the Board meeting of August 28, 2013."

While the above represents the procedural history and law of the case, the only legal question presently before this court is whether the initials in place of proper names and docket numbers on the settlement agreements must be disclosed.[3]

*CONCLUSIONS OF LAW*

I. OPRA

█ "New Jersey can boast of a long and proud 'tradition of openness and hostility to secrecy in government.'" *Educ. Law*

---

[3] All other legal issues, with the exception of counsel fees, have been previously decided, or withdrawn.

Ctr. v. N.J. Dep't of Educ., 198 N.J. 274, 283, 966 A.2d 1054 (2009) (quoting N. Jersey Newspapers Co. v. Passaic Cty. Bd. of Chosen Freeholders, 127 N.J. 9, 16, 601 A.2d 693 (1992)). OPRA furthers this tradition by maximizing "public knowledge about public affairs in order to ensure an informed citizenry and to minimize the evils inherent in a secluded process." Bart v. City of Paterson Hous. Auth., 403 N.J.Super. 609, 616, 959 A.2d 1227 (App.Div. 2008) (quoting Times of Trenton Publ'g Corp. v. Lafayette Yard Cmty. Dev. Corp., 183 N.J. 519, 535, 874 A.2d 1064 (2005)), certif. denied, 198 N.J. 316, 966 A.2d 1080 (2009). It mandates that "government records shall be readily accessible for inspection, copying, or examination by the citizens of this State, with certain exceptions, for the protection of the public interest. . . ." N.J.S.A. § 47:1A–1. Doubts as to the public's right of access are to be construed in favor of access. See N.J.S.A. § 47:1A–1; see also Libertarian Party of Cent. N.J. v. Murphy, 384 N.J.Super. 136, 139, 894 A.2d 72 (App.Div.), certif. granted in part & remanded in part, 188 N.J. 487, 909 A.2d 723 (2006).

██ "Government records" include "all documents and similar materials, and all information and data, including electronically stored data, that have been made or received by government in its official business." Asbury Park Press v. Cty. of Monmouth, 406 N.J.Super. 1, 7, 966 A.2d 75 (App.Div.2009), aff'd, 201 N.J. 5, 986 A.2d 678 (2010). Settlement agreements qualify as accessible records. Id. at 4, 966 A.2d 75. See also Burnett v. Cty. of Gloucester, 415 N.J.Super. 506, 512–13, 2 A.3d 1110 (App.Div.2010) (concluding that settlement agreements made in the course of the official business of the county, even ones bearing confidentiality clauses, are not exempt from disclosure).

This court has in the past decided and here maintains that, simply because information may ordinarily be available to and accessible by the public, this does not ipso facto mean that no legitimate privacy interest predominates, or duty to maintain confidentiality exists. As to the latter, the question of whether certain records must be disclosed may in fact depend on the public

body from whom they are sought. Records provided by the defendants that jeopardize parents' and students' privacy simultaneously jeopardize defendants' entitlement to funding under and compliance with the laws discussed later in this decision. Mandatory disclosure is an issue that must be viewed in context. *See, e.g., Doe v. Poritz,* 142 *N.J.* 1, 83, 662 *A.*2d 367 (1995) (quoting *Aronson v. Internal Revenue Serv.,* 767 *F.Supp.* 378, 389 n. 14 (D.Mass.1991), *modified,* 973 *F.*2d 962 (1st Cir.1992)).

Put differently, there may be a settlement agreement involving school-aged children which, if sought from an administrative law tribunal, would not offend any reasonable expectation of privacy or OPRA, even if sought by an individual with no relationship to the litigation. However, replacing the administrative law tribunal with an educational institution as defined by the federal "Family and Educational Records Privacy Act" ("FERPA"), 20 *U.S.C.* § 1232g,[4] may very well offend that law and its state counterpart. With that said, even educational institutions cannot withhold information from public access where student records are not implicated, unless some other exception under OPRA applies.

OPRA places the burden of defending redactions and other denials of access upon the government. *See N.J.S.A.* § 47:1A-6; *see also Cty. of Monmouth, supra,* 406 *N.J.Super.* at 7, 966 *A.*2d 75; *see also Bent v. Twp. of Stafford Police Dep't, Custodian of Records,* 381 *N.J.Super.* 30, 36, 884 *A.*2d 240 (App.Div.2005).

As expansive as OPRA may be, the rights it protects are not boundless, and the Legislature took care to warn that "a public agency has a responsibility and an obligation to safeguard from public access a citizen's personal information with which it has been entrusted when disclosure thereof would violate the citizen's reasonable expectation of privacy." *N.J.S.A.* § 47:1A-1.

---

4 "Educational agency or institution" is defined as "any public or private agency or institution which is the recipient of funds under any applicable program." 20 *U.S.C.* § 1232g(a)(3).

OPRA specifically accommodates exemptions from disclosure found in it, other statutes, legislative resolutions of either or both houses, regulations promulgated pursuant to a statute or Executive Order of the Governor, an Executive Order of the Governor, Court Rules, or any federal law, regulation or order. *N.J.S.A.* § 47:1A–9. Defendants argue that FERPA, and the New Jersey "Pupil Records Act" ("PRA"), *N.J.S.A.* § 18A:36–19 to –40, preclude it from disclosing parents' and students' initials in response to OPRA requests. They essentially argue that FERPA attaches a reasonable expectation of privacy to qualifying student records as a matter of law. Plaintiffs disagree with defendants' reading of these statutes as well as their corresponding regulations. Importantly, plaintiffs disagreed with the court's order that required them to produce settlement agreements in the first place.

Defendants argue that, although certain information such as docket numbers and initials may be readily accessible by the public from other sources apart from educational institutions, the fact that they specifically must adhere to certain privacy obligations as such an institution means that unlawful disclosure threatens their entitlements under applicable law. Defendants assert that the settlement agreements "were entered into on behalf of and for the benefit of minor students for special education and related services. As such, [they] contain confidential information related to the student's educational placement and provided services." Thus, we arrive at a fork in the road: following one way enhances public access to government records, the other enhances confidentiality and privacy in educational records.

A. FERPA

"OPRA affirmatively excludes from [the definition of government records] twenty-one separate categories of information ... for instance, OPRA directs State custodians of public records to deny access to documents that are exempt from disclosure under federal law." *Bent, supra,* 381 *N.J.Super.* at 36, 884 *A.*2d

240 (referencing *N.J.S.A.* § 47:1A–5(a)). One such federal law is FERPA which, among other things, conditions federal funding to educational institutions on their compliance with certain requirements governing the disclosure of educational records. *See generally* 20 *U.S.C.* § 1232g. An "educational record" is one that bears information "directly related to a student" and is "maintained by an educational agency or institution or by a person acting for such agency or institution." 20 *U.S.C.* § 1232g(a)(4)(i)–(ii). Funds are denied to an educational agency "which has a policy or practice of permitting the release of educational records (or personally identifiable information contained therein ...) of students without the written consent of their parents...." 20 *U.S.C.* § 1232g(b)(1). "Courts from other jurisdictions that have considered the application of both FERPA's confidentiality requirement and a state law requiring disclosure of government records have held that such records should be released with appropriate redactions to comply with FERPA." *K.L. v. Evesham Twp. Bd. of Educ.,* 423 *N.J.Super.* 337, 365, 32 *A.*3d 1136 (App.Div.2011), *certif. denied,* 210 *N.J.* 108, 40 *A.*3d 732 (2012).

The regulations promulgated pursuant to FERPA elaborate on the meaning of "personally identifiable information":

(a) The student's name; (b) The name of the student's parent or other family members; (c) The address of the student or student's family; (d) A personal identifier, such as the student's social security number, student number, or biometric record; (e) Other indirect identifiers, such as the student's date of birth, place of birth, and mother's maiden name; (f) *Other information that, alone or in combination, is linked or linkable to a specific student that would allow a reasonable person in the school community, who does not have personal knowledge of the relevant circumstances, to identify the student with reasonable certainty;* or (g) Information requested by a person who the educational agency or institution reasonably believes knows the identity of the student to whom the education record relates.

[34 *C.F.R.* § 99.3 (emphasis added).]

The settlement agreements fall into the broad definition of "educational record," as they bear information "directly related to a student" and are "maintained by an educational agency ... or

person acting for such agency."[5]  FERPA denies funds to any educational agency with a "policy or practice" of releasing educational records or personally identifiable information contained therein unless certain conditions are met.  The applicable regulation is clear as to what "personally identifiable information" might include.  The above-quoted language therefrom harmonizes with the reasoning of *Doe* that otherwise benign information might, when combined with information from other sources, result in private information being "linked or linkable to a specific student."

The above-cited regulation speaks in terms of the "school community," not a specific school district, as well as the objective gauges of the "reasonable person" and "reasonable certainty." The legislation sets out to protect "personally identifiable information" even where no actual link has been demonstrated.

This court therefore concludes, as it has in the past, that initials contained within government records, when produced by educational institutions, may be properly redacted.  The regulation speaks broadly in terms of "[o]ther information that, alone or in combination, is linked or linkable to a specific student that would allow a reasonable person in the school community, who does not have personal knowledge of the relevant circumstances, to identify the student with reasonable certainty."  Initials, standing alone, may permit a reasonable person in the school community to identify the student to whom they are assigned with reasonable certainly.  This could be magnified, for example, depending on the size of the school community, the availability of student rosters, and other factors.  Even where multiple students may share common initials, other information contained within documents bearing such initials may permit one to narrow the field of

---

[5] The requested records here pass both prongs of the test, as they relate to students individually and/or through their parents and are maintained by the defendants.  Judge Solomon made this clear at the hearing of December 6, 2013, at which time he ordered that settlement agreements for a period of five years be disclosed, but identifying information be redacted to preserve confidentiality and privacy.

possible students (e.g. if a gender, grade, or age, is assigned to the initials in a complaint). Under these facts, the initials plaintiffs seek are exempt from access under OPRA.

■ For similar reasons, docket numbers were also appropriately redacted by defendants. Although, perhaps they alone would not reveal a student's identity, an individual using them in combination with other documents obtained through a docket search could very well help form the link FERPA seeks to prevent. Again, that law forbids disclosure of information that is not only "linked" to a specific student, but merely "linkable" as well. These are not terms commensurate with a desire to afford only bare protection for educational records. For these reasons, defendants shall not reveal docket numbers contained within the settlement agreements produced.

### B. NJ Public Records Act

The unofficially-named "Pupil Records Act" operates in conjunction with FERPA to safeguard pupil records. *See N.J.S.A.* § 18A:36–19. The PRA attempts to balance the competing interests of access to records and "reasonable privacy." *See N.J.S.A.* § 18A:36–19; *see also N.J.A.C.* § 6A:32–7.1(g)(9)–(10). "Student records" include "information related to an individual student gathered within or outside the school district and maintained within [it]." *N.J.A.C.* § 6A:32–2.1. Any information made or maintained for second-party review falls within this definition and, thus, the statute's purview.

Pursuant to its statutory authority, "[e]ach district board of education shall compile and maintain student records and regulate access, disclosure, or communication of information contained in educational records in a manner that assures the security of such records...." *N.J.A.C.* § 6A:32–7.1(b). "In providing access to school records in accordance with *N.J.A.C.* § 6A:32–7.5, school districts must also comply with the requirements of OPRA and FERPA" (internal citation omitted). *K.L., supra,* 423 *N.J.Super.* at 350, 32 *A.*3d 1136. Chief school administrators, or their desig-

nees, are charged with maintaining the security of student records and developing procedures to limit access to authorized persons only. *See N.J.A.C.* § 6A:32–7.4(a). A review of the fifteen enumerated persons and entities qualifying as "authorized" under the regulation reveals that the plaintiffs in this case satisfy none of them. *See N.J.A.C.* § 6A:32–7.5(e).

As stated above, the status of the requestor and reasons for the request are generally irrelevant to an individual's right to access records under OPRA. *See K.L., supra,* 423 *N.J.Super.* at 356, 32 *A.*3d 1136 (citing *Kovalcik v. Somerset Cty. Prosecutor's Office,* 206 *N.J.* 581, 591, 21 *A.*3d 1142 (2011) and *Burnett v. Cty. of Bergen,* 198 *N.J.* 408, 435, 968 *A.*2d 1151 (2009)). "Under State Department of Education regulations, however, school officials may only disclose student records to designated organizations, agencies, or individuals." *Id.* at 356–57, 32 *A.*3d 1136. In *K.L.,* the requestor was a parent of the children whose school records were sought, which gave him a statutory right to access them. *Id.* at 345, 32 *A.*3d 1136.[6] Therefore, the court did not need to address whether other members of the public would have the same right of access as the plaintiff. *Id.* at 356–57, 32 *A.*3d 1136. The situation under consideration, however, is not such an instance. C.G. and R.G. seek records wholly unrelated to their child or themselves.

Much of the discussion concerning FERPA applies with equal force as to the PRA, which also sets out to secure student records and ensure "reasonable privacy." This statute, which provides a more expansive definition of "student record," requires only that the record contain information gathered inside or outside the school district about an individual student, and that such record is maintained within the school district. The statute

---

[6] The *K.L.* court clarified that the requesting parent, who sought records regarding alleged bullying incidents by other students against his children, only had a right to access records about his own children, not those committing the bullying as well. *See K.L., supra,* 423 *N.J.Super.* at 357, 32 *A.*3d 1136.

resolves that records maintained for the purpose of second-party review also qualify as student records. The records here clearly meet this standard. As *K.L.* makes clear, school districts must comply with the requirements of the PRA, FERPA and OPRA. In doing so, school administrators may only release records to authorized persons and entities; plaintiffs are not such a person or entity. In reality, FERPA and the PRA make it so that plaintiffs' purpose in requesting the initials need not be considered; rather, under both, plaintiffs cannot meet the threshold requirement of being persons or entities entitled to their disclosure. Defendants did not violate OPRA in complying with either the PRA or FERPA; rather, they properly guarded the interests they are charged with protecting.

## CONCLUSION

For the foregoing reasons, plaintiffs' request for access to initials and docket numbers contained within the settlement agreements produced by defendants is denied. The court has prepared the resulting judgment and order, and attaches it hereto this decision.