32 A.3d 1136

K.L., PLAINTIFF–APPELLANT, v. EVESHAM TOWNSHIP BOARD OF EDUCATION, DEFENDANT–RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued September 19, 2011—Decided December 12, 2011.

338

Before Judges SABATINO, ASHRAFI and FASCIALE.

*Jamie Epstein* argued the cause for appellant.

*Rebecca D. Winkelstein* argued the cause for respondent (*Cooper Levenson April Niedelman & Wagenheim, P.A.*, attorneys; *Ms. Winkelstein*, on the brief).

*Jeanne LoCicero* argued the cause for amicus curiae American Civil Liberties Union of New Jersey (American Civil Liberties

Union of New Jersey, attorneys; *Ms. LoCicero, Edward Barocas* and *Bobby Conner,* on the brief).

The opinion of the court was delivered by

ASHRAFI, J.A.D.

Plaintiff K.L., the father of a boy and a girl in elementary school, appeals from a final judgment dismissing his claim that defendant Evesham Township Board of Education violated the Open Public Records Act ("OPRA"), *N.J.S.A.* 47:1A–1 to –13, and his common law right of access to public records. He sought school records pertaining to alleged incidents of bullying against his children. Defendant Board of Education declined to provide any records except the children's own school files. It asserted that certain records in its possession are privileged and exempt from disclosure. After plaintiff filed this lawsuit, the Board released one redacted document to plaintiff that reported the disciplining of another student for violent conduct against plaintiff's son.

Although New Jersey's newly-enacted Anti–Bullying Bill of Rights Act ("the Anti–Bullying Act"), *L.* 2010, *c.* 122, *N.J.S.A.* 18A:37–13.1 to –32, did not take effect until after the events relevant to this appeal, we consider as part of our analysis whether that law would modify the school district's obligations with respect to the records in dispute. We also consider whether OPRA or the federal Family Educational Rights and Privacy Act ("FERPA"), 20 *U.S.C.* § 1232g, was the statutory basis upon which the Board disclosed the single disciplinary document.

We affirm in part the Law Division's judgment dismissing plaintiff's complaint, and we reverse it in part. We remand to the Law Division to determine an appropriate award of attorney's fees and costs to plaintiff related to the document that defendant Board disclosed during this litigation.

I.

On January 26, 2010, plaintiff submitted a written request to defendant Board of Education "for school records (Redacted or UnRedacted) pertaining to the safety and security of our children who attend the Evesham School District specifically Evans Elementary School." He sought "copies of school records of bullying/incidents involving my children ... (where they have either been hit or threatened)" on four specific dates in December 2009 and January 2010.

Superintendent of Schools Patricia Lucas responded to plaintiff's request by letter dated February 1, 2010, attaching only a copy of the school district's "Harassment, Intimidation and Bullying Policy." The letter advised plaintiff that he was "always welcome" to review his own children's student records, see *N.J.A.C.* 6A:32–7.1(f), but he was "not entitled to review records of other students," see *ibid.;* 20 *U.S.C.* § 1232g(a)(1), or "records which are not 'government records' under OPRA."

After further correspondence did not change the parties' positions, plaintiff filed a verified complaint in the Law Division alleging violations of OPRA and the common law. He sought declaratory and injunctive relief and reimbursement of his attorney's fees. *See N.J.S.A.* 47:1A–6. The Board filed an answer, a brief, and certifications opposing plaintiff's cause of action.

A certification by the principal of the children's school, Lou Casanova, recited a history of disputes with plaintiff dating to March 2008. At that time, plaintiff's children made statements to school personnel that caused Casanova to make a referral to the Division of Youth and Family Services (DYFS). According to Casanova, the DYFS referral resulted in many adversarial communications and conferences with plaintiff over the next two years regarding his dissatisfaction with Casanova and other school personnel. Casanova was contacted by several political office holders and news organizations inquiring about alleged racial discrimination and other mistreatment of plaintiff's children. In addition, plaintiff demanded that his children be transferred to a different

school and that the Board provide transportation, although the other school was a "walking" elementary school to which transportation was not available.

In its submissions opposing plaintiff's lawsuit, the Board identified two categories of records it possessed but believed need not be disclosed under OPRA or the common law. First, school personnel had made notes at the request of the Board's attorney concerning incidents involving plaintiff's children and contacts with plaintiff. The Board asserted that the notes were not subject to disclosure because the attorney-client privilege, the work product privilege, and the deliberative material exception from the definition of government records exempted them from disclosure. *See N.J.S.A.* 47:1A–1.1. Second, according to the Board, any records that pertain to other students are exempt from disclosure under federal and State privacy laws. *See* 20 *U.S.C.* § 1232g(a)(1)(A); *N.J.A.C.* 6A:32–7.1(f). The Board declared that no other records relating to plaintiff's children existed that fit the description in his request.

At a hearing on May 18, 2010, the trial court ordered the Board to determine whether it had any documents from the relevant dates that were included in the records of other students. If any such records existed, the Board was to notify the parents of any children mentioned in the records. The parents would then be given an opportunity to object to disclosure of the records to the court for *in camera* review.

Principal Casanova reviewed student records and identified one document, an "Elementary Disciplinary Referral Form," in another student's file relating to an incident that involved plaintiff's son. The Board notified the parent of the other student. The parent had no objection to disclosure of the record provided that her child's name was redacted from the document. In July 2010, the Board submitted the redacted document to the court for *in camera* review and, subsequently, provided the same document to plaintiff's counsel.

The disciplinary form does not mention plaintiff's son by name, and the name of the other student has been concealed. It refers to an incident on December 16, 2009, and states that "[Named student] placed his hands around a student's neck, punched him and kicked him. [Named student] admitted doing this." As a result, the named student was given an in-school suspension.

The Board also submitted to the court for *in camera* review eleven pages described as chronological notes of contacts of school personnel with plaintiff and his children on the four dates listed in plaintiff's request for records. The Board provided to plaintiff's attorney a privilege log describing the notes.

In another certification submitted to the court, Board attorney William Donio stated that he believed plaintiff might sue the Board and school personnel after plaintiff filed an administrative complaint against the school district with the United States Department of Education. At that time, which was about June 2008, Donio advised the Board and school personnel to maintain detailed chronological records of their contacts with plaintiff and his children.

After reviewing the notes, the trial court determined by written opinion that they were exempt from disclosure under OPRA and the common law because they were protected by the attorney-client and work product privileges. *See N.J.S.A.* 47:1A–1.1. The court reached no findings or conclusions as to the deliberative material exception to OPRA disclosure requirements. *See ibid.* The court further determined that plaintiff had partially prevailed with respect to the one disciplinary referral document that the Board had disclosed after plaintiff filed this lawsuit, and therefore, plaintiff was entitled to his attorney's fees and costs related to that one document.

Plaintiff's attorney submitted an application for attorney's fees and costs. The Board then filed further opposition and argued that the disciplinary form was not released pursuant to OPRA but pursuant to FERPA, the federal statute governing confidentiality of student records. *See* 20 *U.S.C.* § 1232g. The Board argued

that FERPA does not provide for shifting of attorney's fees to a prevailing litigant. Persuaded by the Board's new argument, the court rescinded its prior ruling and agreed that plaintiff was not entitled to attorney's fees and costs. By order dated December 3, 2010, the court dismissed plaintiff's complaint with prejudice.

After plaintiff filed a notice of appeal, the trial court issued a letter-opinion pursuant to *Rule* 2:5–1(b) expanding upon its earlier written opinions and comprehensively explaining its findings of fact and conclusions of law.

## II.

"The trial court's determinations with respect to the applicability of OPRA are legal conclusions subject to de novo review." *O'Shea v. Twp. of W. Milford,* 410 *N.J.Super.* 371, 379, 982 *A.*2d 459 (App.Div.2009); *accord MAG Entm't, LLC v. Div. of Alc. Bev. Cont.,* 375 *N.J.Super.* 534, 543, 868 *A.*2d 1067 (App.Div. 2005). We also conduct plenary review of the trial court's legal conclusion that a privilege exempts the requested records from disclosure, *Paff v. Div. of Law,* 412 *N.J.Super.* 140, 149, 988 *A.*2d 1239 (App.Div.), *certif. denied,* 202 *N.J.* 45, 994 *A.*2d 1040 (2010); *Asbury Park Press v. Cnty. of Monmouth,* 406 *N.J.Super.* 1, 6, 966 *A.*2d 75 (App.Div.2009), *aff'd,* 201 *N.J.* 5, 986 *A.*2d 678 (2010), as well as its determination that FERPA rather than OPRA controls whether plaintiff is entitled to attorney's fees, *see, e.g., In re Pet. for Ref. on City of Trenton Ord. 09–02,* 201 *N.J.* 349, 358, 990 *A.*2d 1109 (2010).

## A.

OPRA provides that "all government records shall be subject to public access unless exempt" by OPRA itself, any other statute, resolution of the Legislature, Executive Order, the Rules of Court, or federal law. *N.J.S.A.* 47:1A–1. In relevant part, OPRA defines "government record" as:

any paper, ... document, ... that has been made, maintained or kept on file in the course of ... official business ..., or that has been received in the course of ...

official business. . . . [It] shall not include inter-agency or intra-agency advisory, consultative, or deliberative material.

[*N.J.S.A.* 47:1A–1.1.]

OPRA lists categories of documents and information expressly excluded from the meaning of "government record." *N.J.S.A.* 47:1A–1.1, –3, and –10. The government bears the burden of proof to show that a requested record may be withheld under an exemption or exclusion from OPRA's disclosure requirement. *N.J.S.A.* 47:1A–6.

 In this case, the Board asserts that the disputed chronological notes were not records that the school district was required to maintain. *See N.J.A.C.* 6A:32–7.3. Whether a school record is mandated by State regulation, however, does not determine whether it fits the definition of a government record under OPRA. The regulation mandating that the school district maintain certain student records does not prohibit other records. *See ibid.* The disputed notes are documents made and maintained in the course of the school district's official business. *See N.J.S.A.* 47:1A–1.1. In providing access to school records in accordance with *N.J.A.C.* 6A:32–7.5, school districts must also comply with the requirements of OPRA and FERPA, *N.J.A.C.* 6A:32–7.5(g).

The eleven pages that comprise the disputed notes have been provided to us under seal. They are from the four dates listed in plaintiff's OPRA request, and they pertain to plaintiff's children. The notes are factual in content and do not contain "mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of [defendant Board] concerning the litigation." *Jenkins v. Rainner,* 69 *N.J.* 50, 55, 350 *A.*2d 473 (1976). They are not reflective of any litigation strategy, other than that school personnel are keeping detailed records of their contacts with plaintiff and his children in anticipation of his filing a lawsuit. That information has already been revealed to plaintiff.

We make no determination as to whether the incidents reported in the notes are accurately described by plaintiff as "bullying." The statutory definition of "bullying" does not include all violent

or aggressive conduct against a student. The definition, both before and after adoption of the 2010 Anti–Bullying Act, refers to conduct that is "reasonably perceived as being motivated" by a "distinguishing characteristic" of the victim, such as, "race, color, religion, ancestry, national origin, gender, sexual orientation, gender identity and expression, or a mental, physical or sensory [disability]." *N.J.S.A.* 18A:37–14. The statute has not limited "distinguishing characteristic" to those specifically enumerated, but it has consistently required such a perceived motivation.[1]

Thus, harmful or demeaning conduct motivated only by another reason, for example, a dispute about relationships or personal belongings, or aggressive conduct without identifiable motivation, does not come within the statutory definition of bullying. In this case, the limited factual record available to us does not permit a conclusive finding as to whether or not the incidents

[1] Including amended language added by the 2010 Anti–Bullying Act, the statute now provides the following definition of bullying:

"Harassment, intimidation or bullying" means any gesture, any written, verbal or physical act, or any electronic communication, whether it be a single incident or a series of incidents, that is reasonably perceived as being motivated either by any actual or perceived characteristic, such as race, color, religion, ancestry, national origin, gender, sexual orientation, gender identity and expression, or a mental, physical or sensory disability, or by any other distinguishing characteristic, that takes place on school property, at any school-sponsored function, on a school bus, or off school grounds as provided for in section 16 of *P.L.* 2010, *c.* 122 (*C.* 18A:37–15.3), that substantially disrupts or interferes with the orderly operation of the school or the rights of other students and that:

a. a reasonable person should know, under the circumstances, will have the effect of physically or emotionally harming a student or damaging the student's property, or placing a student in reasonable fear of physical or emotional harm to his person or damage to his property;

b. has the effect of insulting or demeaning any student or group of students; or

c. creates a hostile educational environment for the student by interfering with a student's education or by severely or pervasively causing physical or emotional harm to the student.

[*N.J.S.A.* 18A:37–14.]

described in the notes actually involved "bullying" as defined in the statute.

Without deciding whether bullying incidents were referenced, the trial court determined that the notes are exempt from disclosure under both the attorney-client privilege and the work product doctrine. We do not agree that they are privileged as attorney-client communications, but we conclude that the trial court correctly characterized the notes as attorney work product material subject to a qualified privilege.

In New Jersey, the attorney-client privilege is codified in *N.J.S.A.* 2A:84A–20 and *N.J.R.E.* 504. The statute and the evidence rule provide, in pertinent part, that *"communications* between lawyer and his client in the course of that relationship and in professional confidence, are privileged, and a client has a privilege (a) to refuse to disclose any such information, and (b) to prevent his lawyer from disclosing it...." (Emphasis added).

The record before us does not establish that the notes were ever communications from school personnel to the Board's attorneys until plaintiff made his January 26, 2010 request under OPRA. Documents or records kept by a client do not gain protection under the attorney-client privilege simply because the attorney advised that the client keep them and they were eventually sent to the attorney. If it were otherwise, an attorney and client could cause records otherwise subject to disclosure to become privileged. *See Leonen v. Johns–Manville,* 135 *F.R.D.* 94, 98 (D.N.J.1990) ("Merely attaching something to a privileged document will not, by itself, make the attachment privileged."); *see also Payton v. N.J. Tpk. Auth.,* 148 *N.J.* 524, 550–51, 691 *A.2d* 321 (1997) (not all services of an attorney are privileged from disclosure under the attorney-client privilege).

The trial court cited *Hannan v. St. Joseph's Hosp. & Med. Ctr.,* 318 *N.J.Super.* 22, 722 *A.2d* 971 (App.Div.1999), in support of applying the attorney-client privilege to the disputed notes in this case. In *Hannan,* we held that notes prepared by a client at his

attorney's direction and in anticipation of filing a lawsuit were protected by the attorney-client privilege. *Id.* at 27–28, 722 *A.*2d 971. In contrast to this case, the client in *Hannan* had sent the notes to his attorney as he prepared them, before any request had been made for the notes by an adversary party. *Id.* at 26, 722 *A.*2d 971. The notes were the equivalent of the client writing the same information in a letter to his attorney. Such a communication made in confidence would be protected against disclosure, just as the client's personal, confidential discussion with his attorney would be privileged.

In this case, the Board did not present evidence that school personnel did anything with the notes before plaintiff's January 2010 request other than communicate them within the school district and maintain them in school files. Board attorney Donio certified that he advised school personnel to maintain detailed records of their interactions with plaintiff and his children. But neither in his certification nor any other evidential material submitted by the Board is there a representation that the notes were communicated to the Board's attorneys until after plaintiff made his request for school records. The only communication between attorney and client pertinent to the notes was the original advice from Donio to school personnel to maintain the notes. That communication was voluntarily disclosed by the Board as part of its initial submissions in response to plaintiff's OPRA complaint.

We conclude the attorney-client privilege does not apply to the notes because they were not "communications" with the Board's attorneys at the time plaintiff requested access to school records. The evidence, however, amply supports the trial court's conclusion that the notes were attorney work product prepared in anticipation of litigation.

The work product doctrine is recognized by *Rule* 4:10–2(c), one of the court's discovery rules applicable when litigation has commenced. *See Laporta v. Gloucester Cnty. Bd. of Chosen Freeholders,* 340 *N.J.Super.* 254, 259–60, 774 *A.*2d 545 (App.Div.2001) (citing *Hickman v. Taylor,* 329 *U.S.* 495, 67 *S.Ct.* 385, 91 *L.Ed.* 451

(1947)). In *Hannan, supra,* 318 *N.J.Super.* at 28–29, 722 *A.2d* 971, we held that the notes made by the client were also protected from disclosure by the attorney work product privilege although they were made before a lawsuit had been filed. *Accord Roe v. Roe,* 253 *N.J.Super.* 418, 433, 601 *A.2d* 1201 (App.Div.1992) (notes made by victim of domestic violence at her attorney's direction before the filing of any court action were protected against discovery by work product privilege).

■ A document prepared at the direction of an attorney before litigation has commenced may be protected by the work product privilege if its use for litigation was the dominant purpose of preparing the document and if the attorney's belief that litigation would ensue was objectively reasonable. *Miller v. J.B. Hunt Transp., Inc.,* 339 *N.J.Super.* 144, 149–50, 770 *A.2d* 1288 (App.Div. 2001); *accord Tractenberg v. Twp. of W. Orange,* 416 *N.J.Super.* 354, 374, 4 *A.3d* 585 (App.Div.2010); *Rivard v. Am. Home Prods., Inc.,* 391 *N.J.Super.* 129, 155, 917 *A.2d* 286 (App.Div.2007).

Here, attorney Donio reasonably believed that plaintiff would file a lawsuit. Following the DYFS referral of March 2008, plaintiff had contacted politicians and news organizations and claimed that he and his children were victims of racial discrimination by the school district. He had filed a complaint with the United States Department of Education, Office of Civil Rights. Later, plaintiff alleged that the school district was retaliating against his children because he had filed a civil rights complaint. Plaintiff repeatedly demanded that Principal Casanova communicate with him in writing rather than orally. To help refresh memories in the event litigation occurred, attorney Donio instructed his client to maintain detailed notes of contacts with plaintiff and his children. The dominant purpose of the notes was anticipated litigation. The notes are attorney work product.

We reject plaintiff's argument that the notes as described by the privilege log may have gone beyond Donio's specific instructions and, to that extent, should not qualify as attorney work product. That argument draws too fine a line between the

attorney's instructions and the contents of the notes. Our review indicates consistency between Donio's instructions and the notes.

We have previously held that "if a document is protected work product under *Rule* 4:10–2(c), it is also protected from disclosure under OPRA." *Gannett N.J. Partners, LP v. Cnty. of Middlesex,* 379 *N.J.Super.* 205, 218, 877 *A.*2d 330 (App.Div.2005). Consequently, we find no merit in plaintiff's argument that because the exceptions from OPRA's requirements of disclosure must be narrowly construed, *see Asbury Park Press, supra,* 406 *N.J.Super.* at 8, 966 *A.*2d 75; *N.J.S.A.* 47:1A–1, and because the statute does not specifically list work product privilege as an exception, that privilege does not apply to OPRA requests. Not only does the work product privilege grow out of the attorney-client privilege, which is listed as an exception to the definition of "government record" in *N.J.S.A.* 47:1A–1.1, but OPRA also exempts from disclosure documents that are protected by "the Rules of Court." *N.J.S.A.* 47:1A–1, –9(a). One such rule of court is *Rule* 4:10–2(c). The work product privilege has also been recognized by judicial case law as we have described and is thus recognized as an exemption by OPRA. *See N.J.S.A.* 47:1A–9(b) ("The provisions of this act ... shall not abrogate or erode any ... grant of confidentiality heretofore established or recognized by ... judicial case law.").

Although the notes are attorney work product, the work product privilege is not an absolute bar to disclosure. *Rule* 4:10–2(c) provides in pertinent part:

[A] party may obtain discovery of documents, electronically stored information, and tangible things otherwise discoverable under *R.* 4:10–2(a) and prepared in anticipation of litigation or for trial ... only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

*See also In re Kozlov,* 79 *N.J.* 232, 243–44, 398 *A.*2d 882 (1979) (privileges may give way to interests favoring disclosure).

Applying the language of *Rule* 4:10–2(c), the trial court concluded that plaintiff did not show he had "a substantial need" for the

notes or that he would be "unable without undue hardship to obtain the substantial equivalent of the materials by other means." The court viewed the presence of plaintiff's children at the incidents, and his own participation in contacts with school personnel, as the "substantial equivalent" of the information contained in the notes.

Plaintiff argues that he has no ability to learn information from witnesses or to determine the school district's response to the incidents of alleged bullying. He asserts that as a parent, he has a special interest and right to information about his own children.

In contrast to plaintiff's position, amicus curiae American Civil Liberties Union (ACLU) argues that plaintiff's status as a parent and his reason for seeking the school records are irrelevant under OPRA.[2] *See Kovalcik v. Somerset Cnty. Prosecutor's Office,* 206 *N.J.* 581, 591, 21 *A.*3d 1142 (2011) (status of requestor and reasons for request of documents not relevant to right of access to records under OPRA); *Burnett v. Cnty. of Bergen,* 198 *N.J.* 408, 435, 968 *A.*2d 1151 (2009) (court generally does not consider the purpose of an OPRA request). The ACLU contends that OPRA grants to all members of the public the same right to disclosure of government records.

Under State Department of Education regulations, however, school officials may only disclose student records to designated organizations, agencies, or individuals. *See N.J.A.C.* 6A:32–7.5(a) and (e). The regulations were promulgated under authority of *N.J.S.A.* 18A:36–19a. OPRA does not require disclosure of government records that are exempted by "regulation promulgated under the authority of any statute." *N.J.S.A.* 47:1A–9(a).

We need not determine whether other members of the public would have the same rights of access as plaintiff to the records he seeks because plaintiff is in fact a parent of children

---

[2] The ACLU has argued in support of plaintiff's claim for attorney's fees as a prevailing party with respect to the one document that was disclosed to him. It has not addressed whether the notes should also have been disclosed.

whose school records are the subject of this litigation. Plaintiff clearly has a right to review school records pertaining to his own children. *See N.J.A.C.* 6A:32–7.5(e); 20 *U.S.C.* § 1232g(a)(1)(A).

Disclosure of the records to plaintiff may also be required by his common law right of access to public records.[3] Before we turn to plaintiff's complementary right of access under the common law, *see S. Jersey Pub. Co. v. N.J. Expressway Auth.,* 124 *N.J.* 478, 489, 591 *A.*2d 921 (1991), we consider whether the newly-enacted Anti–Bullying Act would affect plaintiff's right to disclosure of the records he seeks.

### B.

The Anti–Bullying Act took effect on September 1, 2011, more than eighteen months after plaintiff's request for records in January 2010. Its provisions are not applicable to the Board's actions in this case. *See Cruz v. Central Jersey Landscaping, Inc.,* 195 *N.J.* 33, 45–46, 947 *A.*2d 1228 (2008) (statutes apply prospectively unless Legislature indicated its intent that a statute be applied retroactively). Nevertheless, defendant Board had a "harassment, intimidation, and bullying" policy in effect at the time of plaintiff's request that duplicated several provisions of the current Anti–Bullying Act.

To understand better a parent's current rights to school records pertaining to bullying incidents, we requested that the parties address the effect of the Anti–Bullying Act on the issues presented in this appeal. Defendant Board argues that the new legisla-

---

[3] We do not address in this decision whether a court may order reimbursement of attorney's fees when records are disclosed pursuant to the common law as opposed to OPRA. *See Mason v. City of Hoboken,* 196 *N.J.* 51, 79, 951 *A.*2d 1017 (2008) (appearing to accept, in the absence of briefing and argument to the contrary, that attorney's fees may be awarded in an action based on common law right to disclosure of public records); *Shuttleworth v. City of Camden,* 258 *N.J.Super.* 573, 598, 610 *A.*2d 903 (App.Div.) (reaching no conclusion as to whether attorney's fees may be recovered under common law right of access to public records), *certif. denied,* 133 *N.J.* 429, 627 *A.*2d 1135 (1992).

tion supports its position that the disputed notes need not be disclosed to plaintiff. Plaintiff argues that the Anti–Bullying Act places no restriction on disclosure of records under other laws and that the policy reasons for the new legislation support disclosure of school records pertinent to bullying incidents.

We have no occasion in this appeal to discuss the full contours of the Anti–Bullying Act. We comment briefly about the provisions of the new legislation that might affect the school district's obligations to create and to disclose records.

The Anti–Bullying Act mandates that school personnel report in writing to the school principal "all acts of harassment, intimidation or bullying" within two days of witnessing or receiving reliable information regarding any such incident. *N.J.S.A.* 18A:37–15b(5). The principal or the principal's designee must initiate a prompt investigation of the incident, which must be completed within ten school days of the report to the principal. *N.J.S.A.* 18A:37–15b(6)(a). The results of the investigation must be reported to the superintendent and the board of education. *N.J.S.A.* 18A:37–15b(6)(b) and (c). Within five school days of reporting the results to the board of education, school officials must inform the parents or guardians of students involved about the results of the investigation. *N.J.S.A.* 18A:37–15b(6)(d).

The statute does not expressly require disclosure of a written investigative report, notes, or any other designated school records. Rather, the statute provides that the school district must inform parents in writing of "the nature of the investigation, whether the district found evidence of harassment, intimidation, or bullying, or whether discipline was imposed or services provided to address the incident of harassment, intimidation, or bullying." *Ibid.*

Through the investigation and reporting process described, a parent such as plaintiff can promptly receive information about an alleged bullying incident. In this case, the Board contends that it informed plaintiff of its determinations pertaining to any incidents reported to Principal Casanova, although not in writing as plaintiff

demanded. In the future, such information must be provided in writing if it pertains to bullying.

Because the Anti–Bullying Act does not apply to this case, we do not address whether records created in compliance with the new legislation must be disclosed under OPRA, the common law, or any other authority. While the new legislation does not expressly require disclosure of particular documents, it also does not expressly modify or repeal any provision of OPRA or other laws regarding access to school records. We leave to the appropriate case any issue as to a parent's or the public's right to disclosure of school records prepared in accordance with the Anti–Bullying Act.

## C.

We next consider whether plaintiff has a common law right to review the disputed notes.

OPRA expressly provides that "[n]othing contained in [OPRA] . . . shall be construed as affecting in any way the common law right of access to any record." *N.J.S.A.* 47:1A–1. The common law definition of "public record" is broader than the definition of "government record" in OPRA. *Mason v. City of Hoboken,* 196 *N.J.* 51, 67, 951 *A.*2d 1017 (2008); *Bergen Cnty. Imp. Auth. v. N. Jersey Media Grp.,* 370 *N.J.Super.* 504, 509–10, 851 *A.*2d 731 (App.Div.), *certif. denied,* 182 *N.J.* 143, 861 *A.*2d 847 (2004). A public record under the common law is:

> one required by law to be kept, or necessary to be kept in the discharge of a duty imposed by law, or directed by law to serve as a memorial and evidence of something written, said, or done, or a written memorial made by a public officer authorized to perform that function, or a writing filed in a public office. The elements essential to constitute a public record are . . . that it be a written memorial, that it be made by a public officer, and that the officer be authorized by law to make it. . . .
>
> [*Nero v. Hyland,* 76 *N.J.* 213, 221–22, 386 *A.*2d 846 (1978) (quoting *Josefowicz v. Porter,* 32 *N.J.Super.* 585, 591, 108 *A.*2d 865 (App.Div.1954)).]

Unlike OPRA, however, the common law takes into account the status of the person or entity requesting access to the

documents and the reason for the request. *Mason, supra,* 196 N.J. at 67–68, 951 A.2d 1017; *see also Higg–A–Rella, Inc. v. Cnty. of Essex,* 141 N.J. 35, 47, 660 A.2d 1163 (1995) (the requestor's reasons for seeking the records may be "a wholesome public interest or a legitimate private interest"). Determining whether the requestor should be granted access to the records requires a case-by-case, and in fact, document-by-document balancing of the requestor's interest against the public agency's interest in confidentiality. *See Educ. Law Ctr. v. N.J. Dep't of Educ.,* 198 N.J. 274, 302, 966 A.2d 1054 (2009); *Keddie v. Rutgers, The State Univ.,* 148 N.J. 36, 54, 689 A.2d 702 (1997).

In *Loigman v. Kimmelman,* 102 N.J. 98, 113, 505 A.2d 958 (1986), the Court listed factors to be considered in evaluating whether the requestor's right of access outweighs the public agency's interest in denying disclosure. "[E]ven if a party has a cognizable common-law interest in obtaining materials that are part of the public record, a court will not grant an absolute right to the documents." *Atl. City Conv'n Ctr. v. S. Jersey Publ'g Co.,* 135 N.J. 53, 60, 637 A.2d 1261 (1994).

Plaintiff asserts he "has a significant personal interest in knowing if and in what manner the Defendant's officials and employees investigated incidents in which his young children were bullied." In that respect, we believe the Anti–Bullying Act, as an expression of State policy, supports plaintiff's claim of an important interest in disclosure of the notes to him as a parent.

The common law right of access, however, does not abrogate privileges. *See id.* at 67, 637 A.2d 1261; *In re Death Penalty Regs.,* 367 N.J.Super. 61, 74, 842 A.2d 207 (App.Div.2004). The work product privilege also applies to plaintiff's claim of a common law right of access to a public record.

Referring again to the provisions of *Rule* 4:10–2(c), it may be that plaintiff does not have a readily accessible source besides the notes for learning whether any of the incidents reported to him by his children were witnessed by others or what specific action

school officials took in addressing the incidents, other than school personnel's oral communications to him. The precise question before us is whether his interest in reviewing contemporaneously documented information about the incidents outweighs the school district's interest in maintaining the confidentiality of its attorney work product.

The trial court concluded that plaintiff's interest does not outweigh the interest of the school district. "If there is a basis in the record to do so, we must ... defer to the trial judge's determination." *Rosenberg v. State Dep't of Law & Pub. Safety*, 396 *N.J.Super.* 565, 580, 935 *A.*2d 815 (App.Div.2007) (quoting *Shuttleworth v. City of Camden*, 258 *N.J.Super.* 573, 588, 610 *A.*2d 903 (App.Div.), *certif. denied*, 133 *N.J.* 429, 627 *A.*2d 1135 (1992)).

To weigh plaintiff's common law right of access against the Board's interest in maintaining confidentiality, we apply the same analysis as the weighing and balancing of competing interests to determine whether the work product privilege under *Rule* 4:10–2(c) should give way to plaintiff's interest in access to the records. The trial court's determination in that regard is subject to the abuse of discretion standard of review. *Roe, supra,* 253 *N.J.Super.* at 433, 601 *A.*2d 1201.

At this time, there is no litigation pending between plaintiff and the Board except this case. The information plaintiff seeks has been offered to him orally by the school district. We have no reason on this record to conclude that the school district has provided inaccurate information or that the contents of the notes differ significantly from that information. Plaintiff has not shown why he has a substantial need for the notes to determine whether the school district investigated incidents that may have occurred on the four dates he listed and what action the school district took. Principal Casanova's certifications indicate that he has always been willing to communicate such information to plaintiff, although not necessarily in the form that plaintiff demanded.

The trial court did not abuse its discretion in determining that plaintiff failed to meet his burden of proving a substantial need for otherwise privileged documents at this time. The notes are privileged from disclosure under the work product doctrine, and therefore, the Board was not required to disclose them to plaintiff in response to either his OPRA or common law requests.[4]

### III.

Having affirmed the trial court's conclusion that plaintiff is not entitled to disclosure of the notes at this time, we next consider whether he is entitled to reimbursement of his attorney's fees for the one document that the Board did disclose in the course of this litigation.

Despite the fact that the disciplinary referral form was provided to plaintiff in July 2010, four months after he filed this lawsuit, the Board contends it was not disclosed pursuant to OPRA but only in accordance with the provisions of FERPA, 20 *U.S.C.* § 1232g. It argues that FERPA does not provide for shifting of attorney's fees to a prevailing litigant. As asserted by plaintiff and amicus ACLU, however, the Board declined to disclose the document until plaintiff filed his OPRA lawsuit and the court ordered *in camera* review. This litigation was the catalyst for disclosure of the disciplinary referral document. *See Mason, supra,* 196 *N.J.* at 76,

---

[4] We reach no conclusion as to whether plaintiff would be entitled to discovery of the disputed notes under *Rule* 4:10–2(c) if other litigation were pending. The trial court presiding over any other litigation could assess the competing interests to determine whether the Board's attorney work product, in whole or in part, should be subject to discovery by plaintiff for purposes of such other litigation.

We also need not discuss whether the exception for "intra-agency advisory, consultative, or deliberative material," *N.J.S.A.* 47:1A–1.1, permits the Board to withhold the notes. The notes do not appear to contain "opinions, recommendations, or advice." *See Gannett, supra,* 379 *N.J.Super.* at 219, 877 *A.2d* 330. Furthermore, any such deliberative materials could be redacted and the factual portions of the notes disclosed to plaintiff. *See id.* at 220, 877 *A.2d* 330.

951 *A*.2d 1017; *Smith v. Hudson Cnty. Register,* 422 *N.J.Super.* 387, 393–94, 29 *A*.3d 313 (App.Div.2011).

Furthermore, FERPA does not itself establish procedures for disclosure of school records. Rather, it provides that federal school funds will be withheld from any school that effectively denies parents access to their own children's records, and it requires educational agencies or institutions to establish appropriate procedures for granting access to such records to parents of school children. 20 *U.S.C.* § 1232g(a)(1)(A). Recognizing that some records contain information about more than one student, FERPA also protects the privacy rights of students and parents. It states:

> If any material or document in the education record of a student includes information on more than one student, the parents of one of such students shall have the right to inspect and review only such part of such material or document as relates to such student or to be informed of the specific information contained in such part of such material.
>
> [20 *U.S.C.* § 1232g(a)(1)(A).]

"Education record" is defined by the statute as: "those records, files, documents, and other materials which—(i) contain information directly related to a student; and (ii) are maintained by an educational agency or institution or by a person acting for such agency or institution." 20 *U.S.C.* § 1232g(a)(4)(A). Such records cannot be released to any "individual, agency, or organization" without the written consent of the student's parents. 20 *U.S.C.* § 1232g(b)(1).[5]

 Here, the disciplinary referral form is an "education record" within the meaning of FERPA. *See United States v. Miami Univ.,* 294 *F*.3d 797, 812 (6th Cir.2002) ("student disciplinary records are education records because they directly relate to a student and are kept by that student's university"). The referral form is a record that pertains to both the child who was disciplined and plaintiff's son as the "student" who was the victim of

---

[5] The statute lists exceptions to its restrictions, none of which are applicable to this case. *See* 20 *U.S.C.* § 1232g(b)(1)(A)-(K).

the choking, punching, and kicking by the named student. Under FERPA, the Board was not permitted to disclose information about the other student to plaintiff, but it was required to provide access to the parts of the record that pertain to plaintiff's own son. The Board fulfilled that obligation by redacting the name of the other student and providing the redacted disciplinary referral form to plaintiff.

Courts from other jurisdictions that have considered the application of both FERPA's confidentiality requirement and a state law requiring disclosure of government records have held that such records should be released with appropriate redactions to comply with FERPA. *See, e.g., Miami Univ., supra,* 294 *F.*3d at 824; *Bd. of Trs. v. Cut Bank Pioneer Press,* 337 *Mont.* 229, 160 *P.*3d 482, 487–88 (2007); *Uninc. Op. Div. of Ind. Newspapers, Inc. v. Trs. of Ind. Univ.,* 787 *N.E.*2d 893, 907–08 (Ind.App.2003); *Osborn v. Bd. of Reg. of Univ. of Wis. Sys.,* 254 *Wis.*2d 266, 647 *N.W.*2d 158, 168 and n. 11 (2002). The Board's argument on appeal that FERPA prohibits the disclosure of a disciplinary form concerning one student to the parent of another student contradicts its own decision to disclose the redacted document to plaintiff.

Plaintiff proved that this OPRA lawsuit was the catalyst for disclosure of the document by showing both "a factual causal nexus between [the] litigation and the relief ultimately achieved [and] that the relief ultimately secured . . . had a basis in law." *Mason, supra,* 196 *N.J.* at 76, 951 *A.*2d 1017 (quoting *Singer v. State,* 95 *N.J.* 487, 494, 472 *A.*2d 138, *cert. denied,* 469 *U.S.* 832, 105 *S.Ct.* 121, 83 *L.Ed.*2d 64 (1984)). He is entitled to reasonable attorney's fees and costs for prevailing with respect to the one document released to him.

Before the trial court, the Board vigorously opposed the amount of reimbursement that plaintiff sought. The trial court did not determine an appropriate amount because it held on reconsideration that plaintiff was not entitled to any attorney's fees. We remand to the trial court to award reasonable reimbursement of

 

attorney's fees and costs to plaintiff under OPRA for prevailing as to disclosure of the one disciplinary document.

Affirmed in part and reversed in part. We do not retain jurisdiction.