**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0161-16T4

L.P. AND H.P., on behalf of
minor child, L.P.,

    Petitioners-Appellants,

v.

BOARD OF EDUCATION OF THE
WEST MORRIS REGIONAL HIGH
SCHOOL DISTRICT, MORRIS COUNTY,

    Respondent-Respondent.

_____

Argued January 18, 2018 — Decided August 15, 2018

Before Judges Simonelli, Rothstadt and Gooden Brown.

On appeal from the New Jersey Commissioner of Education, Agency Docket No. 80-3/16.

L.P. and H.P., appellants, argued the cause pro se.

Jodi S. Howlett argued the cause for respondent Board of Education of the West Morris Regional School District, Morris County (Cleary Giacobbe Alfieri Jacobs, LLC, attorneys; Jodi S. Howlett and Jaclyn M. Kavendek, on the brief).

Gurbir S. Grewal, Attorney General, attorney for New Jersey Commissioner of Education (Beth N. Shore, Deputy Attorney General, on the statement in lieu of brief).

PER CURIAM

Appellants L.P. and H.P are the parents of L.P., who was a student at the West Morris Central High School. Appellants filed a complaint with the Board of Education of the West Morris Regional School District (Board), alleging L.P. was the victim of harassment, intimidation, or bullying (HIB) under the New Jersey Anti-Bullying Bill of Rights Act (Act), N.J.S.A. 18A:37-13 to -21. They appeal from the July 25, 2016 final agency decision of the Commissioner of Education (Commissioner), adopting the initial decision of an Administrative Law Judge (ALJ) that the Board's determination that the complained-of conduct did not constitute HIB within the meaning of the Act was not arbitrary, capricious or unreasonable. We affirm.

The Act defines HIB as follows:

> any gesture, any written, verbal or physical act, or any electronic communication, whether it be a single incident or a series of incidents, <u>that is reasonably perceived as being motivated either by any actual or perceived characteristic, such as race, color, religion, ancestry, national origin, gender, sexual orientation, gender identity and expression, or a mental, physical or sensory disability, or by any other distinguishing characteristic</u>, that takes place on school property, at any school-sponsored function, on

2

a school bus, or off school grounds as provided for in [N.J.S.A. 18A:37-15.3], that substantially disrupts or interferes with the orderly operation of the school or the rights of other students and that:

a. a reasonable person should know, under the circumstances, will have the effect of physically or emotionally harming a student or damaging the student's property, or placing a student in reasonable fear of physical or emotional harm to his person or damage to his property;

b. has the effect of insulting or demeaning any student or group of students; or

c. creates a hostile educational environment for the student by interfering with a student's education or by severely or pervasively causing physical or emotional harm to the student.

[N.J.S.A. 18A:37-14.]

In November 2015, appellants filed a complaint with the District alleging that beginning in November 2014, L.P., then a freshman and member of the girls' fencing team, was a victim of HIB by B.S., then a junior and captain of the fencing team (the HIB complaint). The HIB complaint alleged the following acts of HIB by B.S.:

At fencing practice in November 2014, L.P. accidentally caused a teammate, K.M., to suffer a concussion, which ultimately led to K.M. sitting out the remainder of the season. B.S. announced to the entire team that L.P. gave K.M. a concussion, and "[u]nder [B.S.'s] guidance, [L.P.] would come to believe that she would be kicked off the team or subject

3                                                    A-0161-16T4

to [a] lawsuit if the coach ever found out what [L.P.] had done [to K.M.]."

At a tournament in December 2014, the coach praised L.P. for winning all of her fencing bouts; however, B.S. pointed out that L.P. had lost one bout.

At a tournament on January 17, 2015, B.S. told L.P. that a teammate, D.H., was "such a cry baby and [was] bringing the entire team down[,]" and D.H. was "so fat. How can she fence well when she is totally out of breath." B.S. also told L.P. that she "'felt really bad' that [K.M.] had to sit out the entire season, 'because [] [L.P.] gave her a concussion.'" B.S. said L.P. "was 'lucky she didn't get kicked off the team' [for causing K.M.'s concussion]."

At a tournament on January 24, 2015, B.S. "pointed out [K.M.] and reminded [L.P.] of what she had done [to K.M.]" B.S.'s comments caused L.P. to claim illness for the next two tournaments.

At a tournament on February 23, 2015, appellants learned about K.M.'s concussion. They confronted L.P., who "cried and admitted that she was afraid to be kicked off the team" for giving K.M. a concussion and "was afraid that K.M. would sue her," even though B.S. "did not suggest this to her." L.P. said "[s]he was sick of listening to [B.S.] blaming and shaming other fencers who happened to be her friends, calling [U.K.], a freshman fencer 'stupid', 'slow' or 'can't fence[.]'" L.P. also said "[B.S.] preferred to trash talk. [L.P.] didn't want to hear [B.S.'s] constant bragging about what she did with her current and former boyfriends." L.P. "was also fed up with [B.S.] finding her in the [high school] hallways, bragging about forging teacher signatures to cut classes[.]"

A-0161-16T4

At a private fencing meet in May 2015, B.S. told L.P she should have "stayed away [from the tournament] so that . . . [another] fencer could earn an E rating" and L.P. "should be ashamed 'to steal another fencer's E rating.'"

As the next season approached, B.S. called a team meeting without the coach's authorization and despite the school's decision to eliminate meetings without the coach and "declared that fencers should volunteer to host pre-season parties at their homes." B.S. also "continue[d] to speak of '[L.P.'s] A strip[,]'" and "[L.P.] viewe[d] [B.S.'s] claim to A strip as evidence that the game is already rigged against her. No strip has been assigned and yet [B.S.] already consider[ed] A strip to be hers." L.P. "indicated that she will not feel safe on the team if [B.S.] retains both A strip and a [c]aptain's authority."

Appellants concluded that "[L.P.]'s status as a new and younger member of the [high school] fencing team with better fencing skills in comparison to [B.S.]" motivated B.S. to bully L.P.

In a November 28, 2015 addendum to the HIB complaint, appellants alleged that "[B.S.] finds reason to speak to and interact with [L.P.] or direct [L.P.]'s activities at every practice and needlessly chooses to sit next to [L.P.] when they do not speak."

Following receipt of the HIB complaint, the high school's assistant principal, Anne Meagher, and the anti-bullying specialist, Catherine Cartier, immediately commenced an investigation. They interviewed fourteen witnesses identified as

having information about the alleged HIB, and reviewed written statements from L.P. and appellants, B.S. and her parents, the coach of the girls' fencing team, and members of the girls' and boys' fencing teams.

Cartier found L.P.'s claim that B.S. announced to the team that L.P. caused K.M.'s injury was unsubstantiated, as no other teammate corroborated this alleged statement. Cartier also found L.P.'s claim that B.S. accused L.P. of stealing another fencer's rating was unsubstantiated, as the witnesses L.P. identified as having heard B.S. say this gave a different account of the interaction.

Cartier concluded there was no evidence supporting L.P.'s claim that she "had been the target of HIB, or that B.S. otherwise used her 'power' as captain of the girls' fencing team to make demeaning statements or take advantage [of] or mistreat L.P." Cartier emphasized that "[t]here were no witnesses who substantiated that [B.S.] . . . treated [L.P.] . . . in a negative, demeaning or hostile manner. In fact, witnesses provided statements to the contrary, indicating that [B.S.] . . . was highly supportive of the team, including . . . [L.P.]."

Meagher also found that none of the witnesses corroborated B.S.'s alleged HIB of L.P. She found that "[t]o the contrary, many of the witnesses were surprised by the allegations and stated

A-0161-16T4

that [B.S.] was supportive of all of her teammates, including L.P." Meagher also found "there was no evidence that B.S. had used her authority as captain of the fencing team to in any way harass or mistreat L.P."

On December 8, 2015, Cartier advised appellants the District did not find evidence that L.P. was the target of HIB. The superintendent affirmed that decision, and the Board affirmed the superintendent's decision. On December 16, 2015, the Board advised appellants that the superintendent and Board had accepted Cartier's findings.

Appellants requested a hearing before the Board. Following a hearing, the Board unanimously affirmed the superintendent's decision. On January 7, 2016, the Board notified appellants that it accepted the superintendent's decision.

Appellants filed an appeal with the Commissioner, raising facts and allegations outside the scope of the HIB complaint, and seeking relief outside the scope of the HIB complaint and the Commissioner's authority. They argued, in part, they established that the distinguishing characteristics that motivated the HIB were L.P.'s age and the fact that she "was demonstrably a more skilled athlete than [B.S.] and consequently a threat to [B.S.]."

Following transmission of the matter to the Office of Administrative Law, the Board filed a motion pursuant to N.J.A.C.

6A:3-1.5(g) to dismiss in lieu of filing an answer for failure to state a claim upon which relief can be granted under the Act. The Board argued, in part, the HIB complaint did not allege that a distinguishing characteristic of L.P., either actual or perceived, motivated the alleged HIB.

In opposition, appellants maintained that L.P.'s age and better fencing skills than B.S. were distinguishing characteristics that motivated the HIB, and asserted B.S. used her power as captain of the girls' fencing team to harass, intimidate, and bully L.P. L.P. submitted an affidavit, wherein she primarily attacked Cartier's investigation, but did not verify the specific acts of HIB alleged in the HIB complaint.

In her initial decision, the ALJ set forth the standard for determining a motion to dismiss for failure to state a claim upon which relief can be granted, made findings of undisputed material facts based on the allegations in the HIB complaint and facts presented, and found as follows:

> Based on these facts presented on the pending motion, and <u>even giving [appellants] the benefit of any reasonable inferences that could be drawn from their papers or initial petition, I **FIND** that L.P. cannot prove that the alleged incidents reported as HIB to the school can be sustained</u>. L.P. has interpreted and is now complaining that the HIB investigation has caused her stress, caused her friends to be "punished," for her to be labeled a "liar," and for her to be locked up

> at [Children's Crisis Intervention Services].
> None of this is probative of the question as
> to whether B.S. bullied L.P. about the
> accidental concussion incident or a fencing
> rating prior to the HIB investigation.

[(Emphasis added).]

The ALJ explained that in <u>K.L. v. Evasham Township Board of Education</u>, 423 N.J. Super. 337, 350-51 (App. Div. 2011), we held the complained-of conduct for purposes of HIB must be motivated by a distinguishing characteristic and the statutory definition of HIB consistently required that the perceived motivation be a distinguishing characteristic. We also held that "harmful or demeaning conduct motivated only by another reason, for example, a dispute about relationships or personal belongings, or aggressive conduct without identifiable motivation, does not come within the statutory definition of bullying." <u>Ibid.</u>

The ALJ then analogized the allegations in the HIB complaint regarding B.S.'s conduct to the facts in <u>L.B.T. v. Board of Education of the Freehold Regional School District</u>, EDU 7894-12, initial decision, (Jan. 24, 2013), http://njlaw.rutgers.edu/collections/oal/html/initial/edu07894-12_1.html, which involved a "dispute between two students [over] their respective roles on the swim team." In <u>L.B.T.</u>, the ALJ held, and the Commissioner affirmed, that if a victim was targeted because of a dispute between the two people involved, such as a

personal vendetta of one against the other, that conduct would not be based on a distinguishing characteristic of the victim and would not constitute a violation of the Act. Ibid.

The ALJ found the acts of HIB alleged in the HIB complaint were "not even alleged to have been 'motivated either by any actual or perceived characteristic, such as race, color, religion, ancestry, national origin, gender, sexual orientation, gender identity and expression, or a mental, physical or sensory disability, or by any other distinguishing characteristic.'" The ALJ concluded:

> It was reasonable for the Board to conclude that the circumstances, which certainly showed a conflict between L.P. and . . . [B.S.], did not rise to the level of bullying under the Act, even to the extent that any of the incidents had been corroborated, which they were not. . . . I understand and appreciate that [appellants] might be viewing the matters as constituting "bullying" under a more common place or lay meaning of that term, and there might have even been a clear demonstration of poor sportsmanship, but the Act sets forth a specific legislative definition and regulatory response.
>
> The Board has demonstrated that there are no facts in dispute and that it is entitled to dismissal as a matter of law. [Appellants] have not demonstrated entitlement to the relief sought as a matter of law. The Board applied the standard in the law and did so after a thorough and timely investigation, which the Act intends to be undertaken quickly, including interviews of the alleged

victim, alleged perpetrator, alleged witnesses, and supervising adults.

The ALJ held the Board's HIB decision was not arbitrary, capricious, unreasonable, or against the weight of the evidence, and the Board was entitled to dismissal as a matter of law.

Following a comprehensive review of the record,[1] the Commissioner "concur[red] with the ALJ's conclusion - for the reasons stated in the Initial Decision - that the Board's HIB determination was not arbitrary, capricious or unreasonable." The Commissioner agreed the complained-of conduct was not based on a distinguishing characteristic of L.P., actual or perceived. Citing K.L. and L.B.T.,[2] the Commissioner noted it was "well established that conduct . . . motivated by a personal dispute[,] such as specific roles on a sports team, albeit potentially

---

[1] The record included appellants' fifty-six-page appeal petition, an approximately ninety-page appendix, appellants' and L.P.'s affidavits with additional documents, and affidavits and documents submitted by the Board.

[2] The Commissioner also cited to R.A., on behalf of a minor child, B.A. v. Board of Education of the Township of Hamilton, Mercer County, EDU 10485-15, final decision, http://njlaw.rutgers.edu/collections/oal/html/initial/edu10485-15_1.html (June 22, 2016), and K.T. v. Board of Education of the Freehold Regional School District, Monmouth County, EDU 7894-23, final decision, (Mar. 7, 2013).

A-0161-16T4

harmful, does not fall within the definition of [HIB] under the Act." The Commissioner concluded:

> Based on the circumstances in this case, it was reasonable for the Board to determine that the conduct of B.S. was motivated by the relationship between the two team members and the dynamics of the fencing team, not a distinguishing characteristic protected by the Act. Additionally, despite the [appellants'] assertions to the contrary, there is no evidence in the record to suggest that the Board's decision was induced by improper motives or based on doctored evidence.[3]

The Commissioner adopted the ALJ's decision "for the reasons stated therein," and dismissed the appeal.

On appeal, appellants contend the Commissioner made and failed to correct multiple errors of law and procedure. They argue the Commissioner and ALJ improperly assumed the Board's assertions were true on a motion to dismiss rather than accept their allegations as true and afford them all reasonable inferences therefrom. They argue the "ALJ erroneously applied the summary decision standard on a motion to dismiss," and even if this was proper, "the ALJ erred by ignoring multiple material facts." They also argue the "Commissioner failed to consider whether the Board's [HIB decision] was arbitrary, capricious and unreasonable." They

---

[3] Appellants claimed the HIB investigation was tainted by lies and falsified evidence.

12                                                                    A-0161-16T4

further argue that the Commissioner's and ALJ's decisions rested on a finding the Board never made -- that the complained-of conduct was not motivated by a distinguishing characteristic.

Appellants contend the Commissioner and ALJ misapplied the Act. They argue L.P.'s age and "sports proficiency" were distinguishing characteristics that motivated the HIB; the Commissioner and ALJ wrongly considered the petition to allege a personal dispute; and the Commissioner ignored the Act's "reasonably perceived" language.

Our review of an agency's decision is limited. Lavezzi v. State, 219 N.J. 163, 171-72 (2014). We will uphold the agency's decision unless it is arbitrary, capricious, or unreasonable or not supported by substantial credible evidence in the record as a whole. Dennery v. Bd. of Educ. of the Passaic Cty. Reg'l High Sch. Dist., 131 N.J. 626, 641 (1993). Our review of an agency's final decision is limited to determining:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Lavezzi, 219 N.J. at 171-72 (citation omitted).]

"[I]f substantial evidence supports the agency's decision, 'a court may not substitute its own judgment for the agency's even though the court might have reached a different result[.]'" In re Carter, 191 N.J. 474, 483 (2007) (quoting Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992)).

Moreover, we "should give considerable weight to a state agency's interpretation of a statutory scheme that the legislature has entrusted to the agency to administer." In re Election Law Enf't Comm'n Advisory Op. No. 01-2008, 201 N.J. 254, 262 (2010). "We will defer to an agency's interpretation of both a statute and implementing regulation, within the sphere of the agency's authority, unless the interpretation is 'plainly unreasonable.'" Ibid. (citation omitted). However, we are not bound by an agency's determination of a strictly legal issue. Lavezzi, 219 N.J. at 172 (citation omitted). "Thus, to the extent that [the agency's] determination constitutes a legal conclusion, we review it de novo." Ibid.

Regarding a motion to dismiss for failure to state a claim, the law is clear that the complaint must state "the facts on which the claim is based," R. 4:5-2, rather than relying on conclusory allegations." Printing-Mart Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746, 768 (1989); R. 4:5-2. "Dismissal is the appropriate remedy where the pleading does not establish a colorable claim and

discovery would not develop one." State v. Cherry Hill Mitsubishi, 439 N.J. Super. 462, 467 (App. Div. 2015). "[A] court must dismiss the plaintiff's complaint if it has failed to articulate a legal basis entitling plaintiff to relief." Sickles v. Cabot Corp., 379 N.J. Super. 100, 106 (App. Div. 2005).

In the administrative context, the motion to dismiss should be granted when "the petitioner has advanced no cause of action even if the petitioner's factual allegations are accepted as true or for lack of jurisdiction, failure to prosecute or other good reason." N.J.A.C. 6A:3-1.10. The review "is limited to examining the legal sufficiency of the facts alleged on the face of the complaint." Tanner v. Cmty. Charter Sch. of Paterson, Passaic Cty., EDU 14408-15, initial decision, (Mar. 23, 2016), http://njlaw.rutgers.edu/collections/oal/html/initial/edu14408-15_1.html. The motion should be granted when the complaint on its face fails to set forth a basis for relief, and also when the petitioner fails to provide any factual support for the general allegations of the complaint. Sloan ex rel. Sloan v. Klagholtz, 342 N.J. Super. 385, 394 (App. Div. 2001). Even affording the petitioner's allegations deference, the motion must be granted when the allegations are "palpably insufficient to support a claim upon which relief can be granted . . . and where the petition sets

forth no legal basis for the relief sought." <u>Tanner</u>, EDU 14408-15, initial decision, (Mar. 23, 2016).

Applying the above standards, we discern no reason to reverse the Commissioner's decision. The ALJ's initial decision, which the Commissioner adopted, confirms the ALJ applied the motion to dismiss standard, not the summary decision standard. As required, the ALJ limited her review to the legal sufficiency of the facts alleged on the face of the HIB complaint, considered the allegations as true, and afforded appellants all reasonable inferences that could be drawn therefrom.

In addition, the Commissioner's decision confirms he considered whether the Board's HIB decision was arbitrary, capricious and unreasonable, and concurred with the ALJ's conclusion on this issue. Further, appellants raised the "distinguishing characteristics" issue in their appeal to the Commissioner, and posited they had properly asserted in the HIB complaint that L.P.'s age and "sports proficiency" were distinguishing characteristics that motivated the HIB. Thus, the ALJ and Commissioner properly considered this issue. We are satisfied that the Commissioner and ALJ made no error of law or procedure in this case.

We have considered appellants' remaining argument that the Commissioner and ALJ misapplied the Act in light of the record and

16

applicable legal principles and conclude it is without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). We affirm substantially for the reasons the Commissioner expressed in his July 25, 2016 final decision. We are satisfied there was sufficient credible evidence in the record as a whole supporting the Commissioner's and ALJ's decisions, R. 2:11-3(e)(1)(D), and the Commissioner's decision was not arbitrary, capricious or unreasonable. The record is devoid of evidence that the acts of HIB alleged in the complaint constituted HIB or were motivated by a distinguishing characteristic of L.P., actual, perceived, or reasonably perceived.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0161-16T4